UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LATROY FORD,

      Petitioner,

v.                                     Case No. 8:08-cv-1490-17TBM

SECRETARY, DEPT. OF CORRECTIONS,

      Respondent.
_____/

## O R D E R

Before this Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254 filed by LATROY FORD (Ford), a Florida prisoner. The petition attacks Ford's
convictions for First Degree Murder and Attempted Robbery With A Firearm rendered in
the Twelfth Judicial Circuit in Manatee County, Florida, in state circuit case number
2002-CF-2402. A review of the record demonstrates that the petition must be denied.

### PROCEDURAL HISTORY

On September 25, 2002, Ford was charged by Grand Jury Indictment with one
count of first degree murder, one count of attempted robbery with a firearm, and one count
of possession of a firearm by a convicted felon. (Exh 16: Vol. 1: R 4-7).[1] The charge of
possession of a firearm by a convicted felon was severed by agreement of the parties.
(Exh 16: Vol. 1: R 313-314). On January 5, 2004, after resolution of numerous pretrial
motions, the case proceeded to jury trial before the Honorable Peter Dubensky, Circuit
Judge. Assistant Public Defenders James Slater and Steven Schaefer represented Ford

---

[1] Respondent filed the ten-volume record in Ford's direct appeal as Respondent's Exhibit 16.

at trial. On January 9, 2004, the jury found Ford guilty of first degree murder and guilty of attempted robbery with a firearm as charged. (Exh 16: Vol. 1: R 170). Immediately after the verdict, the court sentenced Ford to a term of life in prison on the first degree murder charge, and a concurrent term of twenty-five years on the attempted robbery charge. (Exh 16: Vol. 1: R 172-176).

## Direct Appeal

Ford pursued a direct appeal raising two issues:

### Issue I

DID THE TRIAL COURT COMMIT ERROR WHEN IT DENIED THE DEFENSE THE OPPORTUNITY TO VIEW ALL THE JUROR QUESTIONS AND THE OPPORTUNITY TO PARTICIPATE IN WHETHER TO ASK THOSE QUESTIONS?

### Issue II

DID THE TRIAL COURT ERR IN FAILING TO GRANT THE MOTION TO SUPPRESS EVIDENCE AND STATEMENTS WHEN MR. FORD'S INITIAL DETENTION IN POLICE CUSTODY WAS PRETEXTUAL?

On April 22, 2005, in Case No. 2D04-706, the Second District Court of Appeal filed a per curiam unwritten opinion affirming Ford's convictions and sentences. (Exhibit 4). *Ford v. State*, 902 So. 2d 145 (Fla. 2d DCA 2005)[table]. The court issued its mandate on June 1, 2005. (Exhibit 5).

## Rule 3.850 Motions for Postconviction Relief

On May 15, 2006, Ford filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Exhibit 6). Ford raised six allegations of ineffective assistance of trial counsel. On February 26, 2007, Ford filed an amended motion for postconviction relief. (Exhibit 7). On June 5, 2007, the court entered an Order

2

directing the State to respond to grounds III and IV of the amended motion. (Exhibit 8). On October 18, 2007, the State filed a memorandum in opposition to the motion for postconviction relief, arguing that grounds III and IV should be summarily denied. (Exhibit 9). The State attached relevant portions of the record which refuted Ford's claims. On October 24, 2007, the state trial court summarily denied all six grounds raised in the original and amended Rule 3.850 motions. (Exhibit 10).

Ford appealed the adverse ruling. On May 7, 2008, in Case No. 2D0705685, the Second District Court of Appeal filed a per curiam silent affirmance of the Order denying postconviction relief. (Exhibit 11). *Ford v. State*, 988 So. 2d 1098 (Fla. 2d DCA 2008)[table]. Ford filed a pro se motion for rehearing and motion for rehearing en banc. (Exhibits 12 and 13). The appellate court denied both motions on July 18, 2008. (Exhibit 14). The court's mandate was issued on September 23, 2008. (Exhibit 15).

## THE PRESENT PETITION

Ford's unsigned and undated § 2254 petition was filed in this Court on August 4, 2008. (Doc. No. 1). Ford raises the following eight grounds for relief:

### Ground One

THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENSE THE OPPORTUNITY TO VIEW ALL THE JUROR QUESTIONS AND THE OPPORTUNITY TO PARTICIPATE IN WHETHER TO ASK THOSE QUESTIONS.

### Ground Two

DID THE TRIAL COURT ERR IN FAILING TO GRANT THE MOTION TO SUPPRESS EVIDENCE AND STATEMENTS WHEN MR. FORD'S INITIAL DETENTION IN POLICE CUSTODY WAS PRETEXTUAL.

3

## Ground Three

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS OR OTHERWISE MOVE TO EXCLUDE EVIDENCE REGARDING DNA TESTING ON THE BASIS THAT Ford'S BLOOD WAS FORCIBLY TAKEN.

## Ground Four

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO EXCLUDE EVIDENCE OF FORD'S FLIGHT.

## Ground Five

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL ALIBI WITNESSES.

## Ground Six
FORD WAS DENIED HIS RIGHT TO DUE PROCESS BECAUSE AT LEAST ONE JUROR BASED IN PART THE DECISION TO FIND FORD GUILTY ON FORD'S LACK OF AN ALIBI.

## Ground Seven

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR A JUDGMENT OF ACQUITTAL ON THE BASIS THAT THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH FORD AS THE PERPETRATOR OF THE OFFENSE.

## Ground Eight

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO EFFECTIVELY CROSS-EXAMINE THE STATE'S WITNESS AND FOR DISCLOSING TO THE JURY THAT THE VIDEOTAPE WAS IN FACT ACCURATE.

## STANDARDS OF REVIEW

### The AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual

findings must be highly deferential. Such findings are presumed to be correct unless

4

rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

## GROUND ONE

Ford contends the trial court erred when it denied the defense the opportunity to view all the juror questions and the opportunity to participate in whether to ask those questions. However, Ford has not asserted a violation of federal constitutional rights. Ford does not contend the state court's procedure for allowing jurors to propose questions for witnesses is itself unconstitutional. Rather, he alleges the trial judge's failure to follow established procedures was prejudicial to the defense. As such, Ford is raising a state law

5

matter which is not cognizable in this federal proceeding. In *Jamerson v. Sec'y for the Dep't of Corr.*, 410 F.3d 682 (11th Cir. 2005), the Eleventh Circuit opined:

> Federal habeas proceedings "are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct. 3383, 3392, 77 L. Ed. 2d 1090 (1983). The writ of habeas corpus protects persons against "extreme malfunctions in the state criminal justice systems," *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in the judgment), and habeas relief has historically been limited "to those whom society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721, 123 L. Ed. 2d 353 (1993) (citation and quotation marks omitted). Because "[d]irect review is the principal avenue for challenging a conviction," and habeas proceedings are "secondary and limited," id. at 633, 113 S. Ct. at 1719, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Id. at 634, 113 S. Ct. at 1720 (citations and quotation marks omitted).
>
> Federal habeas relief is unavailable "for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990)).

*Jamerson*, 410 F.3d at 687-688. This limitation on federal habeas review applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. See *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

In the instant case, the trial court had an established procedure for allowing the jurors to question witnesses. Ford's complaint in the direct appeal was that the court failed to abide by its own procedures. (Exh 1: Initial brief of Appellant at pp. 32, 33, 35). Although appellate counsel argued that the court controlled the process completely and therefore violated Ford's due process rights, counsel acknowledged in his brief that jury questioning of witnesses was within the sound discretion of the trial court. (Id. at pp. 34, 35). Other than

6

a passing reference to "due process," Ford's appellate counsel cited no federal constitutional authority for the proposition that Ford's rights under the United States Constitution had been violated.

Moreover, even if the claim in the federal petition can be construed as raising a federal issue, such constitutional claim has not been exhausted in the state court and is therefore procedurally barred. Ford did not present the federal dimension of Ground One to the state courts at trial or on direct appeal. A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995)("Exhaustion of state remedies requires that the state prisoner fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights"). Ford's state law arguments presented at trial and on direct appeal do not suffice to meet the exhaustion requirement. Thus, this claim is not exhausted for purposes of federal habeas review.

This issue is now procedurally barred from review in the state courts because

the state procedural rules do not provide for a second direct appeal. *See Taylor v. McDonough*, 2006 U.S. Dist. LEXIS 68092 (M.D. Fla., Sept. 13, 2006) (unpublished); Fla. R. Crim. P. 3.850(b), (g). Thus, this Court cannot consider Ford's claim unless he can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable.

Ford does not present any argument to demonstrate cause or prejudice that would excuse his default. Moreover, he has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Absent such a showing, a federal habeas court should not discuss the merits of a claim that has been procedurally defaulted in state court. *Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir.1995)). Accordingly, Ground One of the instant petition is procedurally barred.

Finally and alternatively, even if Ford could overcome these procedural hurdles, he is not entitled to relief from this Court because he cannot demonstrate that the trial court abused its discretion or that the procedures employed by the court violated Ford's due process rights. The facts surrounding the juror question issue, as set out in the State's answer brief, are as follows:

Regarding juror questions, the trial court explained,

> In civil cases for the last two years, I have been allowing jurors to ask questions with the following format. They write the questions down. They submit the questions to me for a screening. I determine whether the question is a legally permissible question. If it is, I show the question to counsel; ask counsel if they have any objection to its being answered, And then if there is no objection, then the witness is asked the questions by me and the witness answers the question. In civil cases, I have not allowed follow-up questions. In criminal cases, I would.

8

> You want to do it, you don't want to do it. Which one? (R. 353).

Defense counsel asked the court if the questions would be posed at the end of the witness' cross (R. 354). The court responded,

> Yes, after the witness has testified completely. And I make it clear to the jurors that what they are allowed to ask are only questions that deal with factual matters. For instance, you know, you can't ask a questions along the lines of witness A said this, witness B said that, why is there a difference in their testimony?
>
> It's more along the lines of, well, how far was it from the tree to the sidewalk where the person was seen running? Let's say somebody doesn't bring that out. Those are the kind of questions I do allow. They're almost all factual.
>
> The questions which I do not allow, they are made part of the record, but the Defense and the State do not get to see the questions because I feel that they might give an insight as to how the jurors are thinking. They often do. And for that reason, the lawyers can't see the question, but they're made part of the record (R. 354).

The court also explained it would allow follow-up questions by both sides after the witness has answered the juror questions (R. 355).

The defense stated its objection was being prevented from viewing the questions the court determined should not be asked (T. 308). The State's position was that the jury should be allowed to ask questions. The court again explained,

> ...I think jurors should be allowed to ask questions, and I think we have a sufficiently—a sufficient screening process to ensure that there'll be no prejudice. I think I indicated the reason why I wasn't allowing either side to see questions that I disallow was because it might provide insights into how a particular juror is thinking about a case, and I don't think that either side should have that opportunity. The jurors are not allowed to share those impressions with anyone while they're deliberating, and I don't think that if a question fosters such an impression it would be available to the lawyers.

So we'll go with that in mind (T. 308-309).

After the court advised the jury of the procedure to ask questions (T. 314-315), defense counsel reiterated his objection to the court's procedure (T. 314-315). The court specifically cautioned defense counsel to place an objection on the record to any question to which he had an objection (T. 314- 315). All of the questions were made a part of the record on appeal (R. 138-140, 162-169).

At trial, the court entertained questions from the jury on the following witnesses: James Holbrook (T. 380-381; R. 134), Darren Esposito (T. 405-406; R. 132, 133), Elaine Counts (T. 777; R. 138, 139, 140), and Richard Bisbing (T. 838-834; R. 162).

The jury had three questions for witness, Elaine Counts (R. 138-140). The judge held a bench conference where he, defense counsel, and the State, discussed the questions (T. 778). The defense had a relevancy objection to the question regarding Appellant's sunglasses, so obviously defense counsel saw that question (T. 778, R. 138). The court ruled he would not allow that question (T. 779). The court and counsel determined that one of the questions had been answered during Counts' testimony so the court decided that answer could be repeated. The judge ultimately decided two of the three questions would be asked of the witness. The colloquy was as follows:

> Court: Okay, just a couple of questions for you, Ms. Counts. Are you able to tell the jury what the hair was like of the person that you saw?

> Counts: It was just about the same a it is now.

> Court: Why didn't you come forward after you heard about the killing at the jewelry store and give the information before you got arrested?

> Counts: Because I'm from that neighborhood, and I know that you don't tell on nobody, because something will happen to you. And that's why, scared.

> Court: Okay. All right, I'm not going to ask the other questions. (T. 779).

There was one jury question for witness James Holbrook (T. 380). At the bench conference, neither counsel voiced an objection (T. 380). After the witness answered the question, the court allowed the State

a follow-up question (T. 381).

Regarding the jury questions for witness, Darren Esposito, neither side had any objections (T. 405-406).

A juror had three questions for witness, Richard Bisbing (R. 162; T. 838). Regarding the third question, "how long to grow hair," the court looked at the juror and acknowledged that the juror had already answered it, to which the juror responded, "yeah" (T. 838). This was because the juror had written the answer next to his question - around 1 to 1/3 mm a day (R. 162). The judge discussed the other two questions with counsel at the ensuing bench conference and neither side had any objections to the questions (T. 838). Also at the bench conference, defense counsel asked Bisbing if he measured the length of the known hairs and Bisbing answered, "about a centimeter" (T. 838). Defense counsel then told the judge that it was okay to ask the question. The court then said, "I'll ask both those questions then? I'll answer them both since Mr. Bisbing just told me the answer to the other one?" (T. 838-839). Defense counsel said, "yes" (T. 839). After the judge repeated the two questions to the jury and gave the noted answers, he asked if either side had any follow-up questions, and neither did (T. 839).

Exh 2: Answer Brief of Appellee at pp. 3-5. A review of the record shows the judge did not

withhold the jury questions from the parties or prohibit them from participating in the

discussion about their admissibility. Also, the record reveals the judge kept a tight rein on

his procedure, and Ford has not shown he was in any way prejudiced by the court's

procedure in this case.

Ground one does not warrant habeas corpus relief.

## GROUND TWO

Ford complains his arrest on his outstanding misdemeanor warrants was merely

a pretext so that the police could question him about Vilma Romero's murder, rendering

his *Miranda* waiver invalid so that his statements to police should have been suppressed.

The Court disagrees.

The record shows that Ford made a knowing and voluntarily waiver of his *Miranda* rights when he chose to speak with the police after he was read his rights, was not charged with the murder at the time of the interview, did not confess to the murder, and the police did not have to inform him of all the possible subjects of interrogation at the interview.

In denying Ford's pretrial motion to suppress statements, admissions or confessions, filed on December 19, 2003, the trial court's written Order stated in pertinent part:

> This matter came on for hearing before the Court on December 23, 2003, on the Defendant's Motion to Suppress Statements, Admissions or Confessions, filed on December 19, 2003. At the hearing, the Court received the testimony of Detective Krystal Carpenter of the Manatee County Sheriff's Office. The Court also heard the argument of counsel.
>
> In his Motion, the Defendant alleges that on September 6, 2002, after being picked up on a misdemeanor violation of probation warrant in Case No. 2002 CT 1047, the Defendant was taken to the Manatee County Sheriff's Office Criminal Investigation Division where he was questioned by Detective Carpenter. Defendant contends that Detective Carpenter read him his rights, but he alleges: (1) Carpenter never informed him of the charges pending against him; (2) she failed to obtain a valid and complete waiver of his constitutional rights; and (3) she failed to advise him that any of their conversations were being recorded in any manner.
>
> ...
>
> **Failure to Inform of Pending Charges**: The testimony revealed that the Defendant was arrested under a warrant for his failure to make his court appearance in Case No. 2002 CT 1047. The videotape[2] revealed that the Defendant was aware he had been arrested for that reason. At Detective Carpenter's request, the Defendant was brought

---

[2] During Carpenter's testimony at the hearing on the motion, the judge watched pertinent portions of the videotape of Appellant's interview with Detective Carpenter (R. 114) (R. 233).

to CID in order to be questioned in the Romero homicide investigation. During the reading of Ford's *Miranda* rights, he inquired what the detective wanted to talk about. She indicated a case number and that she wanted to talk to him about a shooting she was working. When Ford asked for more information, Carpenter indicated she wanted to "get through" the *Miranda* rights first.

The Court finds there were no murder charges pending against the Defendant at the time he was interviewed by Detective Carpenter. Moreover, other than alleging that Carpenter failed to inform Ford "of the charges pending against him," defense counsel has provided no law to the Court indicating that Carpenter had a legal obligation to inform Ford of the substance of her intended interview before reading him his *Miranda* rights. Therefore, the Court does not find this to be a reasonable ground on which to suppress Ford's statements.

**Failure to Obtain Valid and Complete Waiver of Rights:** The Defendant's argument under this ground centers on the Waiver of Rights form introduced as State Exhibit #1 at the hearing. When Ford was asked whether or not he understood his rights (Question 1) and to place a "yes" or "no" on the line indicated, he placed his signature on the line. When Ford was asked whether being advised of his rights, he wanted to talk with the detective (Question 2) and to place a "yes" or "no" on the line, he again placed his signature on the line, but also placed the word "yes" on the line.

Defense counsel argued that when Ford was read his rights, he did not comprehend them, evidenced by the placing of his signature on the line instead of the requested "yes" or "no." The State responded that the [sic] Ford gave affirmative answers to both questions, regardless of whether or not he placed his signature on the lines indicated.

After viewing the videotape, the Court finds that the Defendant was properly warned of his Miranda rights and he understood and waived his rights. Detective Carpenter read the rights from a form placed in front of Ford so he could read along with her. Carpenter read Ford's Miranda rights before any substantive questioning took place. When she questioned Ford whether he understood his rights, he replied "yes." When she asked whether understanding these rights, he wanted to speak further with her, he wrote "yes" on the form after his signature. Ford also signed the waiver form at the bottom. The Court finds this to be a valid waiver of Ford's rights.

(Exh 16: Vol. 1: R. 113-116).

The state court's denial of Ford's motion to suppress was objectively reasonable.

As to Ford's claim that his *Miranda* rights waiver was involuntary because the law

enforcement officers did not advise Ford that the interview involved a murder investigation,

the Supreme Court in *Colorado v. Spring*, 479 U.S. 564, 575-576, 107 S. Ct. 851, 93 L. Ed.

2d 954 (1987), declined to hold that mere silence by law enforcement officials as to the

subject matter of an interrogation is "trickery" sufficient to invalidate a suspect's waiver of

*Miranda* rights:

> We note first that the Colorado courts made no finding of official
> trickery. In fact, as noted above, the trial court expressly found that
> "there was no element of duress or coercion used to induce Spring's
> statements." Spring nevertheless insists that the failure of the ATF
> agents to inform him that he would be questioned about the murder
> constituted official "trickery" sufficient to invalidate his waiver of his
> Fifth Amendment privilege, even if the official conduct did not amount
> to "coercion." Even assuming that Spring's proposed distinction has
> merit, we reject his conclusion. This Court has never held that mere
> silence by law enforcement officials as to the subject matter of an
> interrogation is "trickery" sufficient to invalidate a suspect's waiver of
> *Miranda* rights, and we expressly decline so to hold today.

*Id.* 479 U.S. at 575-576. (citations and footnotes omitted).

In the instant case, Ford was not coerced, tricked, or deceived regarding the

nature of the rights he was waiving when he signed the Miranda form and agreed to speak

to law enforcement officers. Moreover, had Ford wished to end the interview after

discovering the investigation involved a murder, he could have refused to answer questions

or requested counsel. He did neither. In addition, Ford never confessed to the crime.

Therefore, the state court's denial of Ford's motion to suppress was neither contrary to, nor

an unreasonable application of Supreme Court precedent and is entitled to deference by

this Court pursuant to 28 U.S.C. § 2254(d) and (e). Ground Two does not warrant habeas

14

corpus relief.

## GROUND THREE

Ford alleges trial counsel was ineffective for failing to file a motion to suppress

or otherwise move to exclude evidence regarding DNA testing on the basis that Ford's

blood was forcibly taken. The state court denied this allegation for the following reasons:

> The Defendant alleges that counsel was ineffective because he
> failed to file a motion to suppress or otherwise move to exclude
> evidence regarding mitochondrial DNA testing on the basis that the
> Defendant's blood was forcibly taken, albeit pursuant to a search
> warrant, in violation of his 14th Amendment right to due process (or,
> more specifically, right to effective assistance of counsel), 6th
> Amendment right to counsel, and 4th Amendment right to be free
> from unreasonable searches and seizures.

> The Court finds this argument to be without legal merit. The
> United States Supreme Court has held that "a person's Sixth and
> Fourteenth Amendment right to counsel attaches only at or after the
> time that adversary judicial proceedings have been initiated against
> him"—or, in other words, only at critical stages of the proceedings.[3]
> The drawing of a blood sample is a mere preparatory step and does
> not constitute a critical stage at which the accused has the right to the
> presence of his counsel.[4] Thus, it is well settled that a defendant has
> no right to have counsel present at a blood draw.[5] Consequently,
> defense counsel cannot be ineffective for failing to protect a
> non-existent right; the failure to make a meritless objection cannot
> amount to ineffective assistance of counsel.[6]

> Likewise, the failure of defense counsel to raise a meritless
> objection to a search lawfully conducted pursuant to a search warrant

---

[3] *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *see also United States v. Wade*, 388 U.S. 218, 224
(1967).

[4] *Id.* at 227.

[5] *See Schmerber v. California*, 384 U.S. 757 (1966) (no right to counsel at the taking of a blood
sample to determine blood-alcohol content); *Wilson v. State*, 225 so. 2d 321, 324 (Fla. 1969) (no right to
counsel for compulsory blood test to determine blood type).

[6] *See Raleigh v. State*, 932 So. 2d 1054, 1064 (Fla. 2006).

15

does not constitute ineffective assistance of counsel, regardless of whether the Defendant did not consent to the search. The Fourth Amendment recognizes the right to be protected from the governments unreasonable searches and seizures.[7] In the present case, the Defendant resisted having his blood drawn, allegedly necessitating the use of force. By the Defendant's own admission, however, his blood was taken pursuant to a search warrant. Searches based on warrants are generally reasonable,[8] and the Defendant has not claimed otherwise with regard to the circumstances of the search in the instant case. Thus, defense counsel was not ineffective for failing to object to a reasonable search that was conducted pursuant to a search warrant.

Lastly, the Court addresses the Defendant's claim that his 14th Amendment right to due process was violated by defense counsel's failure to suppress DNA evidence. Of course, because this claim is based upon the alleged burdening of Fourth and Sixth Amendment rights, it has already been disposed of by this Court's determination that those Amendments were not infringed)[9] The Court reiterates that defense counsel cannot be ineffective for failing to make a meritless objection.

Exh 10: Order Denying Defendant's Motions for Post Conviction Relief at pp. 2-4. Because

the blood draw was constitutionally valid for the reasons stated by the postconviction court

in its order denying relief, the state court's determination that counsel was not ineffective

for failing to suppress the DNA evidence was proper and cannot be disturbed by this Court.

Ground three does not warrant habeas corpus relief.

## GROUND FOUR

Ford alleges trial counsel was ineffective for failing to exclude evidence of Ford's

---

[7] U.S. Const. Amend. IV.

[8] See, e.g., Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989) (noting that a search is "not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause.").

[9] Cf. Graham v. Connor, 490 U.S. 386, 395 (1989) (where an Amendment "provides an explicit textual source of constitutional protection . .. that Amendment, not the more generalized notion of 'substantive due process.' must be the guide for analyzing claims").

flight from police officers as they attempted to apprehend him. This claim was properly rejected by the state court because as a matter of state law, evidence of flight is admissible to show consciousness of guilt, regardless of a suspect's subjective reasons for taking flight. Consequently, trial counsel cannot be ineffective for failing to attempt to exclude such evidence. The postconviction court stated as follows in the final order denying the motion for postconviction relief:

> Next, the Defendant alleges that counsel was ineffective because he failed to move to exclude evidence regarding the Defendant's alleged flight when the police sought to apprehend him. In support of this claim, the Defendant states that he informed defense counsel that he "fled because he was in possession of cocaine and did not want to be arrested for the cocaine, not because he believed that he was being sought for murder and attempted robbery." The Defendant further alleges that defense counsel, armed with this information, should have moved to exclude any evidence of the Defendant fleeing from police.
>
> The Court finds this argument to be without merit. It is well established that "[w]hen a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance."[10] This Court observes that the Florida Supreme Court has in numerous cases "upheld the introduction of similar flight evidence as consciousness of guilt where the defendant flees from police after committing a murder. . . even though the flight could have been attributed to different crimes or warrants."[11]
>
> In the present case, the Defendant wrecked his car while trying to elude police in a McDonald's parking lot by backing into a building

---

[10] *Straight v. State*, 397 So. 2d 903, 908 (Fla. 1981).

[11] *See, e.g., Hertz v. State*, 803 So. 2d 629, 644 (Fla. 2001)(citing *Shellito v. State*, 701 So. 2d 837, 840 (Fla. 1997) (even though defendant committed several robberies between the murder and his arrest, evidence that defendant resisted arrest the day after the murder was admissible as consciousness of guilt of the murder)).

at approximately 40 miles per hour.[12] Although defense counsel did not object to testimony concerning the Defendant's fleeing from police, the Court is doubtful that such an objection would have been sustained.[13] Regardless, the Court declines to make a specific ruling on defense counsel's performance because even if defense counsel's failure to make such an objection was deficient, the Court finds that the Defendant was not prejudiced by such omission.

The record in the instant case reflects that the testimony concerning the Defendant's flight from law enforcement was a de minimus part of the evidence presented in support of the murder and attempted robbery charges. In addition to the Defendant's own incriminating statements,[14] there were several eye-witnesses who placed the Defendant at the scene or in the vicinity of the murder,[15] as well as mitochondrial DNA evidence to corroborate his presence at the scene of the crime.[16] Considering this overwhelming evidence, the Court finds that the Defendant did not demonstrate a reasonable probability that defense counsel's alleged deficient performance affected the outcome of the proceedings or rendered them fundamentally unfair.[17]

Exh 10: Order Denying Defendant's Motions for Post Conviction Relief at pp. 4-5.

Ground four does not warrant habeas corpus relief.

## GROUND FIVE

Ford argues trial counsel was ineffective for failing to call alibi witnesses. Specifically, Ford refers to his mother, Beulah Ford, and his sister, Darlene Ford, both of whom were provided in the Notice of Alibi filed on December 30, 2003. The state court

---

[12] See Tr. at 785-86.

[13] See Tr. at 781-88.

[14] See Tr. at 580 (Defendant stating "Did he kill some people, too - -")

[15] See Tr. at 7 13-48 (including testimony from witnesses: Vilma Romero (victim's adult daughter), Sunni Woodard, and Elaine Counts).

[16] See Tr. at 675-84

[17] *Provenzano v. State*, 616 So. 2d 428, 431 (Fla. 1993).

concluded, based on a review of the record, that neither Beulah Ford nor Darlene Ford

could account for Ford's location during the entire relevant period surrounding the murder

and attempted robbery with which he was charged, and therefore these two witnesses

would not have established an effective alibi defense. Consequently, Ford could show no

prejudice from counsel's decision not to call these witnesses:

> The Defendant also alleges that counsel was ineffective because he failed to call the Defendant's alibi witnesses. In support of this argument, the Defendant claims that defense counsel failed to call his mother, Beulah Ford, and his sister, Darlene Ford, both of whom were provided in the Notice of Alibi filed on December 30, 2003.[18] The Defendant has stated a facially sufficient claim with regard to defense counsel's alleged failure to call witnesses to testify at trial. He has alleged: (1) the identity of the witnesses; (2) their proposed testimony (albeit sparse in form and substance); (3) how the omission of that testimony allegedly prejudiced him; and (4) that the witnesses were available to testify at trial. [19]0 Nevertheless, the Court rejects the Defendant's claim on its merits.

> As an aside, the Court acknowledges that both of the Defendant's proposed alibi witnesses most likely would have been vulnerable to cross-examination because of bias resulting from their familial relationship with the Defendant. Regardless of that, however, scrutiny of the record reveals that neither Beulah Ford nor Darlene Ford could account for the Defendant's location during the entire relevant period surrounding the murder and attempted robbery with which he was charged. Thus, Beulah Ford and Darlene Ford were not capable of providing a true alibi for the Defendant.

> An alibi is defined as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." [20] In the present case, neither of the Defendant's proposed alibi witnesses could definitively account for his whereabouts during the time of the

---

[18] See Defendant's Notice of Alibi, filed December 30, 2003.

[19] *See e.g., Nelson v. State,* 875 So. 2d 579 (Fla. 2004).

[20] Black's Law Dictionary 79 (8th ed. 2004).

murder and attempted robbery on August 30, 2002, at approximately 1:50 pm. Indeed, Beulah Ford acknowledged that she could not verify the Defendant's location during the time that she was in her bedroom on August 30, 2002, from approximately 1:00 pm until 2:20 pm.[21] Furthermore, according to Sheriff Charlie Wells' deposition testimony, when he questioned Beulah Ford about the Defendant's whereabouts on August 30, 2002, she told the sheriff that the Defendant left her house that day for approximately 20 minutes sometime between 12:25 pm and 2:40 pm.[22]

Likewise, Darlene Ford was incapable of providing an airtight alibi. During her deposition, Darlene Ford admitted smoking marijuana and getting high with the Defendant on August 30, 2002, but acknowledged that the Defendant left at some point, supposedly to get milk.[23] Darlene could not be sure when the Defendant left or returned, and did not know exactly how long he was gone.[24] Thus, although the Defendant claims these witnesses would have testified he was with them in their home at the time of the crimes, such testimony, if offered, would have been subject to impeachment through their prior conflicting deposition testimonies. Indeed, the record conclusively rebuts the Defendant's claim, because neither of the Defendant's proposed alibi witnesses could testify that it was "physically impossible" for the Defendant to be at the scene of the crime on August 30, 2002, at approximately 1:50 pm. As such, the Defendant was not prejudiced by his counsel's failure to call Beulah Ford and Darlene Ford.

At the risk of redundancy, the Court reiterates its reasoning under Ground Two, supra, to further demonstrate that there was a vast amount of evidence against the Defendant: In addition to the Defendant's own incriminating statements,[25] there were several eye-witnesses who placed the Defendant at the scene or in the

---

[21] Deposition of Beulah Ford, p. 29.

[22] Deposition of Sheriff Charlie B. Wells, p. 11.

[23] Deposition of Darlene Ford, pp. 25-26.

[24] Id. at 37.

[25] See Tr. at 580 (Defendant stating "Did he kill some people, too - -")

vicinity of the murder,[26] as well as mitochondrial DNA evidence to corroborate his presence.[27] Taking into account this overwhelming evidence, the Court finds that the Defendant did not demonstrate a reasonable probability that defense counsel's alleged deficient performance affected the outcome of the proceedings or rendered them fundamentally unfair.[28]

In summary, considering the Defendant's proposed alibi witnesses were incapable of providing a true alibi for the Defendant at the actual time of the murder and attempted robbery in conjunction with all the other evidence against the Defendant, the Court's confidence in the outcome of this proceeding is not undermined by defense counsel's failure to call the Defendant's proposed alibi witnesses.

Exh 10: Order Denying Defendant's Motions for Post Conviction Relief at pp. 5-8.

Ground five does not warrant habeas corpus relief.

### GROUND SIX

Ford asserts he was denied his right to due process because at least one juror

based in part the decision to find Ford guilty on Ford's lack of an alibi. This claim should

be denied. The order denying the motions for postconviction relief states:

The Defendant alleges that he was denied his right to due process, right to a fair trial, and his "right not to put on a defense" because at least one juror based in part the decision to find the Defendant guilty on the Defendant's lack of an alibi. In support of this claim, the Defendant attached a Bradenton Herald press article to his motion and claimed that the jury foreman "made statements to the press that his decision to find Defendant guilty was based in part on the fact that Defendant did not have an alibi." Basically, the Defendant claims that he was deprived of a fundamentally fair trial

---

[26] See Tr. at 7 13-48 (including testimony from witnesses: Vilma Romero (victim's adult daughter). Sunni Woodard, and Elaine Counts).

[27] See Tr. at 675-84.

[28] *Provenzano v. State*, 616 So. 2d 428, 431 (Fla. 1993).

because the jury's decision to base its verdict in part on a lack of alibi shifted the burden of proof on the Defendant.[29]

The Court finds this argument to be equally without merit. First, the Court notes that the Defendant only alleges that the jury based its decision "in part" on his lack of alibi. Indeed. according to the Bradenton Herald article attached to the Defendant's 3.850 Motion, the jury foreman, Alan Zirkelbach, indicated that although eyewitness testimony and the Defendant's lack of an alibi were fairly convincing, these were not enough to convict. Rather, it was the mitochondrial DNA evidence that sealed the conviction.[30] It is undisputed that due process requires the state to prove every element of a crime beyond a reasonable doubt.[31] The Defendant, however, misinterprets the jury's consideration of his lack of alibi and erroneously concludes that this consideration shifted the State's burden of proof onto the Defendant. The Court finds this argument untenable. The jury's mere consideration of the Defendant's lack of alibi cannot be deemed to have shifted the burden of proof from the State to the Defendant—especially in addition to the other evidence duly considered by the jury.

The stance of the alibi defense has been succinctly stated as follows:

> At the outset of a criminal trial, the State has both [the burden of proof and the burden of going forward] upon it. If during the presentation of its case the State presents sufficient evidence to rebut the accused's presumption of innocence beyond a reasonable doubt, then the burden of going forward with the evidence shifts to the accused, otherwise, he would stand convicted. The accused is under no duty to present evidence or to establish it by any quantum of proof. He is merely in the interest of justice given an opportunity to rebut the State's evidence. If the accused fails to rebut the State's evidence, he will be convicted. If his rebuttal is successful, he will be acquitted. At no time during a criminal trial does the burden of proof shift to the

---

[29] Inasmuch as the Defendant's claim pertains to jury misconduct or tainted Jury deliberations, such issues can be raised on direct appeal and are not properly raised in a Rule 3.850 motion. *See Lambrix v. State*, 559 So. 2d 1137 (Fla. 1990); *Zeigler v. State*, 452 So. 2d 537 (Fla. 1984).

[30] *See Nevy Kaminski, Latroy Ford Guilty of Murder,* THE BRADENTON HERALD, Jan. 30, 2004.

[31] *See, e.g.. Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991).

accused.[32]

> In light of the overwhelming evidence against him, the Defendant was presented with the burden of going forward with evidence to contradict the State's evidence placing him at the scene of the crime. The Defendant failed to rebut the State's evidence and, thus, was convicted. He was not, however, denied his right to due process or deprived of a fundamentally fair trial.

Exh 10: Order Denying Defendant's Motions for Post Conviction Relief at pp. 8-9.

As the state postconviction court reasonably concluded, the burden of proof never shifted to the defense. In *Falgout v. United States*, 279 F. 513 (5th Cir. 1922), the Fifth Circuit stated:

> . . .By adducing that evidence [of alibi] the defendants did not assume any burden of proof. After, as well as before, that evidence was adduced, the burden was on the prosecution to prove that when the crime was committed the defendants were at a place at which they could take part in the commission of it and that they did participate in committing it.

> Evidence tending to prove an alibi was in rebuttal of evidence offered by the prosecution tending to sustain the charges contained in the indictment. Such evidence is effective in behalf of a defendant in a criminal case, if it, when considered in connection with the other evidence adduced, gives rise to a reasonable doubt of his guilt of the offense charged, though there is no finding that an alibi was shown by a preponderance of evidence. The burden of proof did not shift, and it was not upon the defendants to establish alibis by a preponderance of evidence.

*Falgout*, 279 F. at 515. (citations and footnotes omitted).

Here, it is apparent the jury's decision to find Ford guilty was based other compelling factors, including eyewitness testimony and DNA evidence, rather than the lack of an alibi. Accordingly, the state court's decision was neither contrary to, nor an

---

[32] *Smith v. Smith*, 321 F.Supp. 482, 489 (N.D. Ga. 1970).

23

unreasonable application of Supreme Court precedent and ground six does not warrant habeas corpus relief.

## GROUND SEVEN

Ford contends trial counsel was ineffective for failing to move for a judgment of acquittal on the basis that the evidence was insufficient to establish Ford as the perpetrator of the offense. This claim was correctly denied by the state court for facial insufficiency, whereas Ford failed to plead and prove that he was prejudiced by counsel's alleged deficiency. Alternatively, even if the allegation was sufficient to establish a prima facie allegation of ineffective assistance of counsel, Ford's argument that the evidence was insufficient to sustain the conviction is without merit. The postconviction court reasoned as follows:

> The Defendant alleges that counsel was ineffective because he failed to move for a judgment of acquittal "on the basis that the evidence was insufficient to establish [him] as the perpetrator of the offense." In support of this claim, the Defendant points out a discrepancy between the victim's daughter's testimony that "the alleged offense occurred at 1:50 PM" and testimony of another witness, Elaine Counts, who was shown by surveillance videotape to be inside another store at 2:08 PM. The Defendant further argues that "the investigator in the case and the prosecution both, without any proof, alleged that the videotape did not show the correct time and that the tape was off between 10-15 minutes fast."
>
> To properly allege ineffective assistance of counsel for failing to preserve a sufficiency of the evidence claim, the Defendant should state facts sufficient to show that "[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial."[33] The Defendant has not presented a facially sufficient claim of ineffective assistance of counsel where there is no showing that a motion for

---

[33] *Boykin v. State*, 725 So. 2d 1203 (Fla. 2d DCA 1999).

judgment of acquittal had a likelihood of success.[34]

> Upon review of the evidence introduced in the instant action, the Court finds that the Defendant has not shown that a motion for judgment of acquittal on the basis of insufficient evidence had any likelihood of success. To be sure, there was abundant evidence to establish the Defendant as the perpetrator of the offense. First, although objections were sustained to a nearby storeowner's (David Shin) testimony that time stamps on photos from his store's surveillance were inaccurate by 15 to 20 minutes, the store owner did testify that some beer delivery men had left his store at approximately 1:45 pm before he became aware of the victim in this case being shot.[35] There was also testimony that the Sheriffs Department was dispatched to the shooting at 1:51 pm.[36] Additionally, and as noted above, several eyewitnesses testified to seeing the Defendant at the scene of the crime; furthermore, there was mitochondrial DNA evidence that corroborated his presence. In light of all this evidence, the Court is not even inclined to find that the Defendant has presented a facially sufficient claim, much less shown a likelihood of success on a motion for judgment of acquittal.

Exh 10: Order Denying Defendant's Motions for Post Conviction Relief at pp.9-11.

Ground seven does not warrant habeas corpus relief.

## GROUND EIGHT

Finally, Ford contends trial counsel was ineffective for failing to effectively

cross-examine the State's witness and for disclosing to the jury that the videotape was in

fact accurate. This claim was properly denied by the state court because it was conclusory

and insufficient to state a claim upon which relief can be granted. As stated by the

postconviction court:

"A defendant may not simply file a motion for postconviction relief

---

[34] *See Rogers v. State*, 567 So. 2d 483 (Fla. 1st DCA 1990).

[35] See Tr. at 420-26.

[36] See Tr. at 643.

containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing."[37] Rather, the defendant must allege specific legal and factual grounds that demonstrate a cognizable claim for relief.[38]

In the instant action, the Defendant has failed to plead this claim specifically. First, as ably noted by the State, the Defendant does not allege in his motion that the videotape is accurately timed. The Defendant also failed to state "who" could have established that the tape was correct.[39] The Defendant's conclusory allegations—that the jury would have "entertained a reasonable doubt as to Defendant's guilt and acquitted Defendant" if trial counsel had "effectively cross-examined the prosecution witnesses" and argued to the jury that the videotape was in fact accurate—are not supported by a properly pled factual basis. Thus, this claim is facially insufficient, and this Court summarily denies this claim.

Exh 10: Order Denying Defendant's Motions for Post Conviction Relief at p. 11.

Ford's argument is conclusory and speculative. An application for relief pursuant

to 28 U.S.C. §2254 requires fact pleading. Vague and conclusory claims failing to state

facts which would show an entitlement to relief can be dismissed without further effort on

the part of the court. *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136

(1977). Moreover, Ford has cited no authority to demonstrate that the rejection of this claim

by the state court was contrary to, or an unreasonable application of federal precedent.

Ground eight does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Ford's petition for writ of habeas corpus is denied. The Clerk is directed

---

[37] *State v. Coney*, 845 So. 2d 120, 135 (Fla. 2003).

[38] *Davis v. State*, 875 So. 2d 359, 368 (Fla. 2003).

[39] Upon review of the record, the Court is not convinced that any cross-examination or argument could have established that the time displayed on the still photos (i.e. videotape) was accurate.

26

to enter judgment against Ford and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on _DECEMBER 17_, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Latroy Ford, Pro se